Mia Farber (SBN 131467)
Mia.Farber@jacksonlewis.com
Talya Z. Friedman (SBN 216185)
Talya.Friedman@jacksonlewis.com
Eric J. Gitig (SBN 307547)
Eric.Gitig@jacksonlewis.com
JACKSON LEWIS P.C.
725 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5408
Telephone: (213) 689-0404
Facsimile: (213) 689-0430

Attorneys for Defendant
TRAVELCENTERS OF AMERICA LLC

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

GENOVEVA RONQUILLO, individually and on behalf of all others similarly situated,

Plaintiffs,

vs.

TRAVELCENTERS OF AMERICA, LLC; BBDI LLC; and DOES 1 to 50, inclusive,

Defendants.

Case No.:

**NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. §§ 1332, 1441, 1446, and 1453 (CAFA)**

(Filed concurrently with Declarations of Mia Farber, Mark R. Young, and Karen Kaminski; Civil Case Cover Sheet; Notice of Interested Parties; and Corporate Disclosure Statement)

**TO THE HONORABLE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA, PLAINTIFF GENOVEVA RONQUILLO, AND HER ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Defendant TRAVELCENTERS OF AMERICA LLC ("Defendant") hereby invokes this Court's jurisdiction under the provisions of 28 U.S.C. §§ 1332(d), 1441, 1446 and 1453, and removes the above-entitled action to this Court from the Superior Court of the State of California in and for the County of Kern based on the Class Action Fairness Act of 2005 ("CAFA"). In support thereof, Defendant asserts the following:

1. On April 24, 2019, Plaintiff GENOVEVA RONQUILLO ("Plaintiff") filed an unverified Class Action Complaint for Damages against Defendant and BBDI LLC ("BBDI") in the Superior Court of the State of California in and for the County of Kern entitled *GENOVEVA RONQUILLO, individually and on behalf of all others similarly situated, Plaintiffs, vs. TRAVELCENTERS OF AMERICA, LLC; BBDI LLC; and DOES 1 to 50, inclusive, Defendants*, Case No. BCV-19-101121, which sets forth the following seven causes of action: (1) Rest Periods; (2) Meal Periods; (3) Itemized Wage Statement (Check Stubs) Penalties; (4) Waiting Time Penalties; (5) Restitution; (6) Minimum Wages and Liquidated Damages; and (7) Penalties under California Labor Code § 558. ("Complaint"). As stated in paragraph 30, the Complaint is brought as a class action pursuant to California Code of Civil Procedure § 382 on behalf of all "individuals who are currently or have been employed in California by Defendants as non-exempt employees during the Class Period (which commences four years prior to the filing of this action and continues until judgment is rendered herein), and whose working conditions are not controlled by a collective bargaining agreement."

2. Defendant first received Plaintiff's Summons and Complaint and Civil Case Cover Sheet when it was served on April 30, 2019. (Farber Decl. ¶ 2.) A true and complete copy of the Summons, Complaint, and Civil Case Cover Sheet received by Defendant is attached as **Exhibit "A"** to the Declaration of Mia Farber ("Farber Decl.").

3. On May 29, 2019, Defendant filed and served: (i) an Answer to the Complaint in the Kern County Superior Court, making a general denial as permitted by California Code of Civil Procedure § 431.30(d) and asserting various affirmative defenses; and (ii) a Notice of Related Cases. (Id. at ¶ 3.) True and correct copies of Defendant's Answer and Notice of Related Cases are attached as **Exhibit "B"** to the Mia Farber Declaration.

4. As of the date of this Notice of Removal, **Exhibits "A"** and **"B"** to the Farber Declaration constitute all of the pleadings received or filed by Defendant in this matter. (Id. at ¶ 4.)

**TIMELINESS OF REMOVAL**

5. This Notice of Removal has been filed within thirty (30) days after Defendant was first served with a copy of Plaintiff's Summons and Complaint on April 30, 2019. (Farber Decl. at ¶ 2.) Therefore, it has been filed within the time period mandated by 28 U.S.C. § 1446(b). *Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 354 (1999) ("[T]he defendant's period for removal will be no less than 30 days from service, and in some categories, it will be more than 30 days from service, depending on when the complaint is received.").

**NOTICE TO ALL PARTIES AND STATE COURT**

6. In accordance with 28 U.S.C. § 1446(d), the undersigned counsel certifies that a copy of this Notice of Removal and all supporting papers will be served promptly on Plaintiff's counsel and filed with the Clerk of the Kern County Superior Court. Therefore, all procedural requirements under 28 U.S.C. § 1446 will be followed and satisfied.

**VENUE IS PROPER**

7. This action was filed in the Superior Court in and for the County of Kern. Thus, venue of this action properly lies in the United States District Court for the Eastern District of California pursuant to 28 U.S.C. §§ 84(b) and 1441(a). Venue of this action is also proper pursuant to 28 U.S.C. § 1391, providing that an action may be venued in a judicial district where a substantial part of the events or omissions giving rise to the claim occurred, and where, based on information and belief, the plaintiff resides. (*See* Farber Decl. ¶ 2, **Exhibit "A"** ["Complaint"] at ¶¶ 2, 14.)

**REMOVAL BASED ON CLASS ACTION FAIRNESS ACT**

8. Removal of this action is proper under CAFA, 28 U.S.C. §§ 1332 *et seq.* Section 4 of CAFA, 28 U.S.C. § 1332(d)(2), has been amended to read, in relevant part:

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which – (A) any member of a class of plaintiffs is a citizen of a State different from any defendant.

9. In addition, CAFA provides for jurisdiction in the district courts only where the proposed class involves 100 or more members, or where the primary defendants are not States, State officials, or other governmental entities. 28 U.S.C. § 1332 (d)(5).

10. As set forth below, this is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1332(d), in that it is a civil action filed as a class action involving more than 100 members, and – based on the allegations in the Complaint – the matter in controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and Plaintiff is a citizen of a state different from Defendant. *See* 28 U.S.C. §§ 1332(d) and 1453. Furthermore, neither Defendant nor BBDI is a State, State official, or other governmental entity.

**A. The Putative Class Contains More Than 100 Members.**

11. CAFA provides that the district courts shall not have jurisdiction over class actions where "the number of members of all proposed plaintiff classes in the aggregate is less than 100." 28 U.S.C. § 1332(d)(5).

12. Here, the Complaint asserts that "during the Class Period, there have been over one hundred Class members," and Defendant's records identify over 3,000 individuals who have been employed as non-exempt employees in the State of California between April 24, 2015 (four years prior to the filing of the Complaint) and the present whose working conditions are not controlled by a collective bargaining agreement (collectively referred to herein as "Putative Class Members" or the "Putative Class"). (Complaint at ¶ 32; Declaration of Karen Kaminski ("Kaminski Decl.") at ¶¶ 5 and 6.) Accordingly, the numerosity requirement for jurisdiction under CAFA is satisfied.

**B. None Of The Named Defendants Are Government Entities.**

13. Defendant is not a State, a State official, or any other governmental entity. (Declaration of Mark R. Young ("Young Decl.") at ¶ 4.)

14. Upon information and belief, BBDI is also not a State, a State official, or any other governmental entity.

**C. Minimal Diversity Is Satisfied Under CAFA.**

15. The standard for establishing diversity of citizenship under CAFA is different than diversity jurisdiction under 28 U.S.C. 1332(a)-(c). CAFA's diversity requirement is satisfied when there is minimal diversity, *i.e.*, when at least one member of a class of plaintiffs is a citizen of a state in which none of the defendants are citizens. 28 U.S.C. § 1332(d)(2); *see Snyder v. Harris*, 394 U.S. 332, 340 (1969) ("if one member of a class is of diverse citizenship from the class' opponent, and no nondiverse members are named parties, the suit may be brought in federal court even though all other members of the class are citizens of the same State as the defendant."); *Bradford v. Bank of Am. Corp.*, No. CV 15-5201-GHK (JCx), 2015 U.S. Dist. LEXIS 120800, at *13 (C.D. Cal. Sep. 10, 2015) ("[defendant] needed only to establish that one plaintiff was a citizen of a different state from any one defendant at the time of removal.").

16. Citizenship of the parties is determined by their citizenship status at the action's commencement. *See Mann v. City of Tucson*, 782 F.2d 790 (9th Cir. 1986).

17. For individuals, citizenship is determined by a person's domicile. *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986). "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). While residence and citizenship are not the same, a person's place of residence is *prima facie* evidence of his or her citizenship. *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519-20 (10th Cir. 1994) (allegation by party in state court complaint of residency "created a presumption of continuing residence in [state] and put the burden of coming forward with contrary evidence on the party seeking to prove otherwise"); *see also Smith v. Simmons*, 2008 U.S. Dist. LEXIS 21162, *22 (E.D. Cal. 2008). Furthermore, a person's intention to remain may be established by his or her place of employment. *Youn Kyung Park v. Holder*, 572 F.3d 619, 625 (9th Cir. 2009); *see also Francisco v. Emeritus Corp.* (C.D.Cal. June 12, 2017, No. CV 17-02871-BRO (SSx)) 2017 U.S.Dist.LEXIS 90131, at *10.) ("Plaintiff's residence and employment in California are sufficient evidence of his intent to remain in California.").

18. Defendant is informed and believes, as alleged by Plaintiff in the Complaint, that Plaintiff was, at the time this action was commenced, and still is, a resident and citizen of the State of California. (Complaint at ¶ 14; Kaminski Decl. at ¶ 3.) Furthermore, Plaintiff alleges that she was employed by Defendant in Kern County, California." (Complaint at ¶¶ 2, 14 and 20.) Accordingly, Plaintiff is a citizen of the State of California for purposes of removal under CAFA.

19. For purposes of removal under CAFA, the citizenship of a limited liability company is analyzed as an "unincorporated association" under Section 1332(d)(10). *Ferrell v. Express Check Advance of Georgia*, 591 F.3d 698, 704 (4th Cir. 2010); *Marroquin v. Wells Fargo, LLC*, 2011 U.S. Dist. LEXIS 10510, at *4 (S.D. Cal. Feb 3, 2011). CAFA expressly states that "for purposes of this section .... an unincorporated association or corporation is deemed to be a citizen of the state where it has its principal place of business and under whose laws it is incorporated or organized." 28 U.S.C. § 1332(d)(10). This is different from Section 1332(c) which has been interpreted to provide that "[a]n LLC is a citizen of every state in which is owners/members are citizens"). *Johnson v. Columbia Properties Anchorage,* 437 F.3d 894, 899 (9th Cir. 2006).

20. With respect to ascertaining a corporation's principal place of business, the United States Supreme Court has adopted the "nerve center test." *Hertz Corp. v. Friend*, 559 U.S. 77, 80-81 (2010). Under the nerve center test, a corporation's principal place of business is where a corporation's high level officers direct, control and coordinate the corporation's activities. *Id.* A corporation can only have one "nerve center." *Id.* at 93-94. In evaluating where a corporation's "nerve center" is located, courts will look to the center of overall direction, control, and coordination of the company and will no longer weight corporate functions, assets, or revenues in each state. *Id.*

21. At the time Plaintiff filed the Complaint and presently, Defendant has been a limited liability company organized under the laws of the State of Delaware. (Young Decl. at ¶ 3.) At all relevant times, Defendant's company headquarters, and thus its principal place of business, has been in the State of Ohio. (Id.) Defendant controls its operations from its

Westlake, Ohio headquarters. (Id.) The State of Ohio is where the majority of Defendant's executive, administrative, financial and management functions are conducted, and from where the majority of Defendant's high level officers direct, control, and coordinate the company's activities. (Id.) Most members of Defendant's executive team maintain their offices in Westlake, Ohio, while none of Defendant's executive officers reside in the State of California. (Id.) Accordingly, for purposes of removal under CAFA, Defendant is citizen of the State of Ohio, and is not a citizen of the State of California.[1]

22. Given the above, minimal diversity exists under CAFA because at least one member of the Putative Class (Plaintiff) was, at the time this action was commenced – and is still believed to be – a citizen of the State of California, while Defendant was – and still is – a citizen of the States of Delaware and Ohio.[2] 28 U.S.C. § 1332(d)(2).

**D.   The Amount In Controversy Exceeds $5,000,000 Based On A Plausible Reading Of The Allegations Of The Complaint.[3]**

23. Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000. *See* 28 U.S.C. § 1332(d)(6). Congress intended federal jurisdiction to be

---

[1] While Plaintiff alleged that she and the Putative Class were employed by Defendant TravelCenters of America, LLC, Defendant does not have any employees in the State of California. (Young Decl. at ¶ 5.) Rather, Plaintiff and Putative Class Members, as defined in the Complaint, were employed by TA Operating, LLC ("TA Operating"), a subsidiary of Defendant. (Id.) While only Plaintiff's allegations in the Complaint must be considered for purposes of this Notice of Removal, it should be noted that TA Operating is similarly a limited liability corporation organized under the laws of the State of Delaware, with its principal place of business and company headquarters located in Ohio. (Id. at ¶6.) Thus, minimal diversity would exist even if Plaintiff had named TA Operating as a defendant in this action.

[2] The citizenship of BBDI and Doe defendants is immaterial for the purposes of determining whether CAFA's minimal diversity requirements are satisfied. *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007) ("under CAFA, complete diversity is not required; 'minimal diversity' suffices."); *see also* 28 U.S.C. § 1441(a) ("For purposes of removal under this Chapter, the citizenship of defendants used under a fictitious name shall be disregarded.").

[3] Defendant denies each and every allegation set forth by Plaintiff in the Complaint and denies that Plaintiff or Putative Class Members are entitled to any compensatory or statutory damages, injunctive relief, restitution, civil penalties, attorneys' fees, or any other relief. Defendant also denies that this action can proceed as a class action, in part because Plaintiff signed an arbitration agreement with a class waiver. Notwithstanding the above, removal of this action is proper given that removal is based on the allegations asserted in the complaint.

appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." Sen. Jud. Comm. Rep., S. REP. 109-14, at 42. Moreover, any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. S. Rep. 109-14, at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case . . . . Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly . . . .").

24. In determining whether the amount in controversy exceeds $5,000,000, the Court must presume Plaintiff will prevail on each and every one of her claims. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp. 993, 1001 (C.D. Cal. 2002) (*citing Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994) (the amount in controversy analysis presumes that "plaintiff prevails on liability"); *Angus v. Shiley Inc.*, 989 F.2d 142, 146 (3d Cir. 1993) ("the amount in controversy is not measured by the low end of an open-ended claim")). Moreover, the argument and facts set forth herein may appropriately be considered in determining whether the jurisdictional amount in controversy is satisfied. *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 843, n.1 (9th Cir. 2002) (*citing Willingham v. Morgan*, 395 U.S. 402, 407 n.3 (1969)).

25. Notably, "[t]here is no obligation by defendant to support removal with production of extensive business records to prove or disprove liability and/or damages with respect to plaintiff or the putative class members at this premature (pre-certification) stage of the litigation." *Muniz v. Pilot Travel Ctrs. LLC*, 2007 U.S. Dist. LEXIS 31515, at *15 (E.D. Cal. Apr. 30, 2007). Rather, a defendant seeking removal must prove by a preponderance of the evidence that the aggregate amount in controversy exceeds the jurisdictional minimum. *Rodriguez v. AT&T Mobility Servs. Ltd. Liab. Co.*, 728 F.3d 975,

977 (9th Cir. 2013) ("the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard").

26. In *Dart Cherokee Basin Operating Company, LLC v. Owens*, the United States Supreme Court held that, whereas here, the complaint is silent as to whether the amount in controversy meets CAFA's jurisdictional threshold of $5,000,000 "a defendant's notice of removal need include only a *plausible* allegation that the amount in controversy exceeds the jurisdictional threshold." 135 S. Ct. 547, 554 (2014) (emphasis added). Further, "'[n]o "antiremoval presumption attends cases invoking CAFA' because 'Congress enacted [CAFA] to facilitate adjudication of certain class actions in federal court.'" *Adams v. Toys 'R' US – Delaware, Inc.*, 2015 U.S. Dist. LEXIS 11338, at *5-6 (N.D. Cal. Jan. 29, 2015) *quoting Dart*, 135 S. Ct. at 554.

27. Moreover, if a plaintiff asserts statutory violations, the court must assume that the violation rate is 100% unless the plaintiff specifically alleges otherwise. *See Muniz v. Pilot Travel Ctrs. LLC*, 2007 U.S. Dist. LEXIS 31515, at *12-13 (E.D. Cal. Apr. 30, 2007) ("As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations. Plaintiff is the 'master of [her] claim[s],' and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought.") (*citing Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)); *see also Arreola v. The Finish Line*, No. 14- CV-03339-LHK, 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014) ("District courts in the Ninth Circuit have permitted a defendant removing an action under CAFA to make assumptions when calculating the amount in controversy—such as assuming a 100 percent violation rate, or assuming that each member of the class will have experienced some type of violation—when those assumptions are reasonable in light of the allegations in the complaint."); *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010) ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation.").

28. While Plaintiff does not allege a specific amount in damages, her Complaint was filed as an "unlimited" jurisdiction civil case on behalf of the Putative Class. As such, Plaintiff is claiming that the monetary damages and restitution she is seeking exceeds the $25,000 minimum jurisdiction limits of the California Superior Court,[4] which is confirmed by the fact that she designated her case as "Unlimited (Amount demanded exceeds $25,000)" on her Civil Case Cover Sheet. (Farber Decl. at ¶ 2, **Exhibit "A"** at Civil Case Cover Sheet.) She further contends that all Putative Class Members have been universally subjected to Defendant's "widespread," "repeated," and "systemic employment policies, practices and procedures, and who have claims that are "typical" of the other Putative Class Members. (Complaint at ¶¶ 2, 19, 29, and 34.) Thus, based on the allegations in the Complaint, it is plausible that Plaintiff is seeking at least $25,000 [the unlimited jurisdictional amount] per Putative Class Member, which places over $75,000,000 in controversy. (Kaminski Decl. at ¶ 6.[5]) *See Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 689 (2006) (finding jurisdictional amount met where complaint sought no specific amount in damages, but pled the amount in controversy to exceed $25,000 and there were 1,160 class members).

29. In the alternative, and without admitting that Plaintiff could recover any damages whatsoever, a plausible reading of the causes of action alleged in the Complaint[6] also places an aggregate amount in controversy exceeding $10,740,000, exclusive of attorneys' fees, interest, and costs, as follows:

a. <u>First Cause of Action – Rest Periods</u>: Plaintiff alleges that Defendant's policies, procedures and practices deny Putative Class Members the right to rest breaks as prescribed under California law, and that Defendants' policy and practice is to not pay Putative

---

[4] *See* California Code of Civil Procedure §§ 86(a) and 88.

[5] While the Complaint defines the Putative Class period as April 24, 2015 to the present, all calculations used in this Notice of Removal have been performed based on Defendant's payroll data for Putative Class Members during the limited period of January 30, 2017 to April 30, 2019. (Complaint at ¶ 31; Kaminski Decl. at ¶¶ 4-7.)

[6] *See e.g. Lucas v. Michael Kors (USA) Inc.*, No. CV 18-1608-MWF (MRWx), 2018 U.S. Dist. LEXIS 78510, at *8 (C.D. Cal. May 9, 2018) ("Defendants may use reasonable assumptions in calculating the amount in controversy for purposes of removal.").

Class Members "any premium" for non-compliant or missed rest breaks. (Complaint at ¶¶ 21-23 and 41.) Thus, based on the allegations in the Complaint, it is plausible that Plaintiff is seeking to recover at least one rest period premium per week for all Putative Class Members, which would place $1,125,000 in controversy in connection with her rest period claim ($9.00[7] hourly rate x 1 rest period per week x 125,000 workweeks). (Kaminski Decl. at ¶ 7.)

b. Second Cause of Action – Meal Periods: Plaintiff similarly alleges that Defendant's policies, procedures and practices "routinely" deny Putative Class Members the right to meal breaks as prescribed under California law, and that Defendants' policy and practice is to not pay Putative Class Members "any premium" for non-compliant or missed meal breaks. (Complaint at ¶¶ 21-23, 44 and 46.) Thus, based on the allegations in the Complaint, it is plausible that Plaintiff is seeking to recover at least one meal period premium per week for all Putative Class Members, which would place $1,125,000 in controversy in connection with her meal period claim ($9.00 hourly rate x 1 meal period per week x 125,000 workweeks). (Kaminski Decl. at ¶ 7.)

c. Third Cause of Action – Itemized Wage Statement Penalties: Plaintiff alleges that "[a]t all times relevant," Defendant failed to provide accurate wage itemized statements, as required under Labor Code section 226(a), and that Putative Class Members are entitled to recover penalties pursuant to Labor Code section 226(e) and all other damages permitted by statute. (Complaint at ¶¶ 27 and 48-52 (emphasis added).) During the one year statute of limitations period mandated under Labor Code section 226 (*i.e.*, April 24, 2018 to the present), Defendant has issued in excess of 30,000 biweekly wage statements (covering over 35,000 pay periods) to over 2,000 Putative Class Members. (Kaminski Decl. at ¶ 8.) Thus, based on the allegations in the Complaint, which asserts that a violation of Labor Code section 226(a) existed on each wage statement, it is plausible that Plaintiff has placed over $3,000,000 in controversy in connection with her wage statement claim ($50 per first wage statement per Putative Class Member plus $100 for each subsequent wage statements, up to

---

[7] All calculations have been performed using the lowest possible minimum wage rate of $9.00 per hour. *See* California Department of Industrial Relations History of California Minimum Wage Chart.

a maximum of $4,000 per Putative Class Member). *See* Labor Code § 226(e)(1); *see also Moppin v. Los Robles Reg'l Med. Ctr.*, No. EDCV 15-1551 JGB (DTBx), 2015 U.S. Dist. LEXIS 129574, at *10 (C.D. Cal. Sep. 24, 2015) (district court finding that a 100% violation rate was justified because the plaintiff there asserted in her complaint that "at all relevant times herein, defendants intentionally and willfully failed to furnish plaintiff and the class members with accurate wage statements," thereby accusing defendants of "issuing inaccurate wage statements 'at all times' and in regards to both Plaintiff and the class members."); *Lucas v. Michael Kors (USA) Inc.*, No. CV 18-1608-MWF (MRWx), 2018 U.S. Dist. LEXIS 78510, at *25 (C.D. Cal. May 9, 2018) (noting that "it is not unreasonable to assume that, with this many violations alleged by Plaintiff, every one of the wage statements issued during the one-year period could very likely have been noncompliant.").

d. Fourth Cause of Action – Waiting Time Penalties: Plaintiff alleges that she and a subclass consisting of "all Class members whose employment has terminated during the Class Period" (collectively, "Putative Subclass Members" or the "Putative Subclass") are "entitled to" recover penalties pursuant to Labor Code Section 203, seeking a penalty of up to 30 days' wages for failure to pay all unpaid wages at separation. (Complaint at ¶¶ 28, 55 and 56.) During the applicable statute of limitations period, over 1,500 Putative Class Members have been terminated, resigned, or have otherwise separated from their employment with Defendant. (Kaminski Decl. at ¶ 6.) Thus, based on the allegations in the Complaint, it is plausible that Plaintiff has placed over $3,240,000 in controversy in connection with her claim for waiting time penalties (1,500 Putative Subclass Members x $9.00 hourly rate x 8 hours x 30 days).

e. Sixth Cause of Action – Minimum Wages and Liquidated Damages: Plaintiff alleges that "[a]t all times relevant," Defendant has failed to pay "each of the class members" all wages due, including minimum wages, and that Putative Class Members "are entitled to each recover the unpaid [minimum] wages and liquidated damages in an amount equal to the [minimum] wages unlawfully unpaid." (Complaint at ¶¶ 24 and 72-75 (emphasis added).) Thus, based on the allegations in the Complaint, it is plausible that

Plaintiff is seeking to recover at least one hour of minimum wages per week for all Putative Class Members, which would place $2,250,000 in controversy in connection with her minimum wage claim ($9.00 hourly rate x 1 hour per week x 125,000 workweeks plus an equal amount in liquidated damages). (Kaminski Decl. at ¶ 7.)

30. Plaintiff also seeks an unspecified amount of attorneys' fees in her Complaint, which the Court should consider and include in the amount in controversy. (Complaint at ¶¶ 4(g) and 83.) *See, e.g., Goldberg v. CPC Int'l, Inc.* 678 F.2d 1365, 1367 (9th Cir. 1982), cert. denied, 459 U.S. 945 (1982); *Galt G/S v. JSS Scandinavia* 142 F.3d 1150, 1155-56 (9th Cir. 1998). Attorneys' fee awards in California wage-hour class actions can easily total several hundred thousands of dollars or more. *See, e.g., McGuigan v. City of San Diego*, 183 Cal. App. 4th 610, 638 (2010) (noting attorneys' fees paid in settlement of $1.6 million); *Pellegrino v. Robert Half Int'l, Inc.*, 182 Cal. App. 4th 278, 287, 296 (2010) (affirming $558,926.85 in attorneys' fees in exemption misclassification class case, but reversing as to multiplier); *Vasquez v. California*, 45 Cal. 4th 243, 249 (2008) (noting award of $435,000 in attorneys' fees for class claims involving failure to pay wages, liquidated damages, penalties and waiting time penalties). Moreover, the Ninth Circuit recently concluded "that the amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal). Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-15 (9th Cir. 2018); *see also Lucas v. Michael Kors (USA) Inc.*, No. CV 18-1608-MWF (MRWx), 2018 U.S. Dist. LEXIS 78510, at *32 (C.D. Cal. May 9, 2018) ("unaccrued post-removal attorneys' fees can be factored into the amount in controversy.").

31. "Courts in this circuit have held that, for purposes of calculating the amount in controversy in a wage-and-hour class action, removing defendants can reasonably assume that plaintiffs are entitled to attorney fees valued at approximately twenty-five percent of the projected damages." *Fong v. Regis Corp.*, No. C 13-04497 RS, 2014 U.S. Dist. LEXIS 275,

at *23 (N.D. Cal. Jan. 2, 2014); *see also Herrera v. Carmax Auto Superstores Cal., LLC*, No. EDCV-14-776-MWF (VBKx), 2014 U.S. Dist. LEXIS 188729, at *12 (C.D. Cal. June 12, 2014) ("Substantial authority supports a 'benchmark' 25 percent attorneys' fees figure to be added to any claim for which attorneys' fees are available."); *Hamilton v. Wal-Mart Stores, Inc.*, No. ED CV 17-01415-AB (KKx), 2017 U.S. Dist. LEXIS 162856, at *16 (C.D. Cal. Sep. 29, 2017) ("The Ninth Circuit has allowed an estimate fee award of 25% of a plaintiff's damages in calculating the amount in controversy under CAFA."); *Gutierrez v. Stericycle, Inc.*, No. LA CV15-08187 JAK (JEMx), 2017 U.S. Dist. LEXIS 20975, at *51 (C.D. Cal. Feb. 14, 2017) ("it is appropriate to include in the calculation of the amount in controversy a potential fee award of 25% of the value of certain of the substantive claims.").

32. The Court should therefore consider attorneys' fees of at least $2,685,000, a conservative estimate at 25% of the aggregate amount in controversy calculated in Paragraph 29 above. *See, e.g., Oda v. Gucci Am., Inc.*, 2015 U.S. Dist. LEXIS 1672, at *11-13 (C.D. Cal. 2015) (finding the defendant's assumptions regarding attorneys' fees to be "reasonable" on removal where the defendant stated "Plaintiffs would recover a 25 percent fee" totaling "$1,329,245," based on "the amount in controversy before attorneys' fees" of "$5,316,978").

33. Thus, for the reasons discussed above, and without conceding or admitting to the underlying merit of Plaintiff's claims, it is plausible that the aggregate amount in controversy in connection with Plaintiff's putative class claims surpasses the $5,000,000 jurisdictional threshold required under CAFA.

///

///

///

///

///

///

///

///

**CONCLUSION**

34. Based on the foregoing, Defendant hereby removes the above-captioned action from the Kern County Superior Court to this Court based on CAFA requirements (28 U.S.C. §§ 1332(d), 1441, 1446 and 1453), and respectfully requests that this Court retain jurisdiction for all further proceedings.

Respectfully submitted,

Dated: May 30, 2019

JACKSON LEWIS P.C.

By: */s/ Mia Farber*
Mia Farber
Talya Z. Friedman
Eric J. Gitig

Attorneys for Defendant
TRAVELCENTERS OF AMERICA LLC